## WALDEN *v.* SKINNER.

1. Where, as in this case, the evidence exhibited in the record shows that the purchase of land was made upon certain trusts which through mistake the trustee failed to have properly declared in the deed, the *cestui que trust* is entitled to a decree directing the deed to be reformed.

2. The jurisdiction of the Circuit Court is not defeated by the fact that with the principal defendant are joined, as nominal parties, the executors of a deceased trustee, citizens of the same State as the complainant, to perform the ministerial act of conveying title, in case the power to do so is vested in them by the laws of the State.

APPEAL from the Circuit Court of the United States for the Southern District of Georgia.

The facts are stated in the opinion of the court.

*Mr. Benjamin H. Hill* for the appellant.
*Mr. A. R. Lawton, contra.*

MR. JUSTICE CLIFFORD delivered the opinion of the court.

Trusts are either express or implied, the former being such as are raised or created by the act of the parties, and the latter being such as are raised or created by presumption or construction of law.    *Cook* v. *Fountain*, 3 Swanst. 585, 592.

Implied trusts may also be divided into two general classes : First, those that rest upon the presumed intention of the parties.    Secondly, those which are independent of any such express intentions, and are forced upon the conscience of the party by operation of law.    2 Story, Eq. Jur., sect. 1195.

Sufficient appears to show that Sarah S. Walden, the complainant, on the sixth day of May, 1874, filed her bill of complaint in the court below against the respondents, to wit, Darius S. Skinner and John N. Lewis and Charles S. Hardee, executors of Charles S. Henry, deceased, who in his lifetime was the trustee of Penelope W. Tefft and her three children.    Preliminary to the charging part of her complaint she alleges and states that on the 28th of October, 1847, she intermarried with William P. Tefft, who on the 9th of August, five years later, departed this life intestate and without children, leaving the complainant as his sole heir and legal representative ; that on the 4th of June, six years subsequent to the death of her first husband, she inter-

married with Charles C. Walden, who, on the eighth day of December of the next year, departed this life testate, leaving no children by the complainant, and that he by his will bequeathed to her all the property and rights owned and possessed by her at the date of their marriage; and that the father of her first husband died intestate on the 30th of June, 1862, but that no administration was ever had upon his estate, and that his widow, the mother of her first husband, departed this life testate on the 11th of September eleven years later; that her first husband had two brothers at the date of her marriage neither of whom ever married and both of whom died without children, that at the death of the elder of the two he had a life policy of insurance for $5,000, which his administrator collected and paid to his two living brothers.

Allegations then follow in the bill of complaint which relate more immediately to the subject-matter of the controversy, from which it appears that Elias Fort, June 28, 1831, conveyed a certain tract of land to Charles S. Henry and Stephen C. Greene, as trustees and in trust for Penelope W. Tefft and her three sons, William P. Tefft, Henry D. Tefft, and Charles E. Tefft, and it is therein declared that the said property is for the use of the mother during her lifetime and the three sons, and that after the death of the mother it shall be for the use of the three sons alone as tenants in common, and that in case of sale " the proceeds to be reinvested upon the same uses and trusts as aforesaid, and if not sold, then the property, after the death of the mother, was to be distributed by said trustees to each of the said sons as shall survive and attain the age of twenty-one years."

Greene, one of the trustees, subsequently died, leaving Charles S. Henry the sole surviving trustee under the trust-deed, and she charges that on the 19th of July, 1848, the mayor and aldermen of the city of Savannah conveyed to him as such trustee a certain lot of land numbered five, Monterey Ward, in said city, the lot being then subject to certain annual ground-rents, as specified in the conveyance, and the complainant avers that the conveyance is informal and incomplete, inasmuch as the trustee never signed it, as it was intended, and that it fails to set forth and express the trust interests of the three children

as it should do. Wherefore she alleges that it should be reformed and be made to conform to the purposes of the trust as created and set forth in the original trust-deed.

Persuasive and convincing reasons in support of that request are alleged which will hereafter be reproduced when the merits of the controversy are considered.

Relief specific and general is prayed, as is more fully set forth in the transcript. Process was served and the respondents appeared, and after certain interlocutory proceedings filed separate answers.

All of the defences to the merits are set up in the answer of the first named respondent, who admits all of the preliminary matters alleged in the bill of complaint. He also admits that there was in existence at the time of the first marriage of the complainant the trust estate held by the surviving trustee arising under the conveyance from Elias Fort to the said two trustees, which, as he alleges, was held for the sole and separate use of the mother during her life, and remainder at her death to her three sons as tenants in common.

Prior to that transaction there is no controversy between the parties as to the facts, and he also admits that the authorities of the city conveyed the lot called Monterey Ward to the surviving trustee, but he alleges that by the terms of the conveyance the legal title to the lot vested in the trustee in trust for the sole and separate use of the mother, the trust being executory only so long and for such time as the *cestui que trust* should remain a *feme covert;* and he denies that the conveyance is informal and incomplete in any particular, or that it was ever expected or intended by any one that the trustee should sign the same, and he avers that it was accepted by the trustee for the purposes therein set forth.

Attempt is also made to enforce that view by a specific denial of most of the reasons assigned in the bill of complaint in support of the request that the conveyance to the trustee of the lot called Monterey Ward may be reformed so as to conform to the trusts created and expressed in the antecedent trust-deed.

Both of the other respondents allege that they are citizens of the State where the suit is brought, and deny that the Circuit

Court had any jurisdiction to make or execute any order, judgment, or decree against them in the premises.

Proofs were taken, the parties heard, and the Circuit Court entered a decree in favor of the respondents, dismissing the bill of complaint. Prompt appeal was taken by the complainant to this court, and since the appeal was brought up she has filed the assignment of errors set forth in the brief of her counsel. They are ten in number, all of which will be sufficiently considered in the course of the opinion, without giving each a separate examination.

Before examining the questions presented in respect to the second deed, it becomes necessary to ascertain the true construction and meaning of the original trust-deed so far as respects the second trust therein created and defined. Eight hundred dollars constituted the consideration of the conveyance, and it was made upon the trust that if, during the lifetime of the mother of the three sons, it should be deemed advisable by her to sell and convey the premises, then upon this further trust that the trustees as aforesaid, or the survivor of them, upon her application and with her consent, signified by her being a party to the conveyance, will sell and convey the lot and improvements for the best price which can be obtained for the same, to any person or persons whatsoever, without applying to a court of law or equity for that purpose to authorize the same, and the proceeds thereof upon the same trusts as aforesaid to invest in such other property or manner as the mother of the sons shall direct and request for the same use, benefit, and behalf.

Explicit and unambiguous as that provision is, it requires no discussion to ascertain its meaning; nor is it necessary to enter into any examination of the third trust specified in the conveyance, as it is conceded that the trust property was sold by the surviving trustee for reinvestment during the lifetime of the mother at her request, she joining in the conveyance as required by the terms of the instrument creating the trust.

Twenty-four hundred dollars were received for the conveyance of the trust property, and all of that sum, except $600 turned over to the mother, was invested in buildings then being erected upon lot numbered five, called the Monterey Ward.

Purchase of that lot had previously been made by the surviving trustee named in the original trust-deed, and it appears that the parties understood that it was to be upon the same uses and trusts as were contained in the trust-deed by which the title to the lot sold was acquired.

Proof that the new lot numbered five, called Monterey Ward, was purchased by the father and the three sons during the lifetime of the father seems to be entirely satisfactory, and it is equally well established that each contributed one-fourth part of the sum of $240 paid for the purchase-money of the lot. Satisfactory proof is also exhibited that Henry D. Tefft, one of the three brothers, died Aug. 13, 1849, unmarried and intestate, and that he had a valid subsisting insurance upon his life in the sum of $5,000, which his administrator collected and paid to his surviving brothers.

Eighteen hundred dollars of the proceeds arising from the sale of the property acquired by virtue of the first trust-deed were appropriated towards erecting buildings on the new lot purchased by the father and the three sons while in full life, and when the one whose life was insured deceased, the two survivors appropriated each his proportion of the money received to the same purpose, with the understanding that the property was subject to the same uses and trusts as the property previously acquired and sold.

Competent proofs of a convincing character are also exhibited in the transcript that the first husband of the complainant contributed other sums towards completing the buildings, leaving no doubt that he paid his full proportion for the improvements as well as for the lot purchased of the city authorities.

Enough appears to show that the buildings were completed more than two years before the first husband of the complainant died intestate and without children, when it is obvious that she became the sole heir to all the interest he possessed in the said estate, whatever it might be. Two years elapsed after the buildings were completed before the father of the three sons died, and the proofs show that during that period the complainant resided with the parents of her husband, and that her rights as his heir-at-law were uniformly recognized by the family; that she continued to reside there with her mother-in-law after

the death of the senior Tefft, until the decease of his widow, and that throughout that period she paid one-half of all repairs, taxes, insurance, and other expenses of the property as if she were equally interested in the same with her mother-in-law, and was liable to bear an equal proportion of all such expenses.

Opposed to that is the proof that the mother-in-law, one year before her death, when in a low and depressed frame of mind, bequeathed the whole of the lot in question to the first-named respondent, who is her nephew, and on the same day executed a deed to him of the entire property, to take effect in possession after her death. Sole title to the premises in fee-simple is claimed by the respondent under those instruments, and he brought ejectment against the complainant to dispossess her of the premises, and it appears that she was at great disadvantage in attempting to defend the suit, because the trustee had omitted to see that the title was conveyed in trust for the benefit of the *cestuis que trust* as in the prior trust deed, as he should have done, to carry into effect the understanding of all the parties to the sale of the prior trust premises and the purchase of the lot in question. What she alleges is that the purchase of the new lot was made for the same *cestuis que trust* as those described in the deed of the old lot, and that the understanding of all was that the deed of the new lot should contain and declare the same uses and trusts in favor of the same persons, and the proofs to that effect are full and entirely satisfactory.

Support to that view is also derived from the fact that the surviving trustee in the old deed is the grantee in the new deed, and that he is therein more than once described as trustee, and in the introductory part of the instrument is denominated trustee of Mrs. Penelope W. Tefft, wife of Israel K. Tefft, of the city and State previously mentioned in the same instrument.

Ten years before the suit was instituted the trustee in the new deed departed this life, and the other two respondents were appointed and qualified as his executors. Unable to obtain complete redress at law, the complainant prays that the deed of conveyance from the city of the lot and improvements in question may be reformed and be made to conform to the true intent and purpose for which the lot was purchased, and to

that end that it may be made to include the same uses and trusts raised, created, and declared in the prior deed from Elias Fort, according to the understanding and agreement of all the parties.

Besides that she also prays that her equities in and to the property, including the improvements, may be set forth, decreed, and allowed by the court, including such as are in her favor from the payment of taxes, insurance, and repairs upon the property during the lifetime and since the death of her mother-in-law, and that the first-named respondent may be enjoined from further proceeding in his ejectment suit to recover possession of the premises.

Courts of equity afford relief in case of mistake of facts, and allow parol evidence to vary and reform written contracts and instruments, when the defect or error arises from accident or misconception, as properly forming an exception to the general rule which excludes parol testimony offered to vary or contradict written instruments. Where the mistake is admitted by the other party, relief, as all agree, will be granted, and if it be fully proved by other evidence, Judge Story says, the reasons for granting relief seem to be equally satisfactory. 1 Story, Eq. Jur., sect. 156.

Decisions of undoubted authority hold that where an instrument is drawn and executed that professes or is intended to carry into execution an agreement, which is in writing or by parol, previously made between the parties, but which by mistake of the draftsman, either as to fact or law, does not fulfil or which violates the manifest intention of the parties to the agreement, equity will correct the mistake so as to produce a conformity of the instrument to the agreement, the reason of the rule being that the execution of agreements fairly and legally made is one of the peculiar branches of equity jurisdiction, and if the instrument intended to execute the agreement be from any cause insufficient for that purpose, the agreement remains as much unexecuted as if the party had refused altogether to comply with his engagement, and a court of equity will, in the exercise of its acknowledged jurisdiction, afford relief in the one case as well as in the other, by compelling the delinquent party to perform his undertaking according to the

terms of it and the manifest intention of the parties. *Hunt* v. *Rousmaniere's Adm'rs*, 1 Pet. 1, 13; *Same* v. *Same*, 8 Wheat. 174, 211.

Even a judgment when confessed, if the agreement was made under a clear mistake, will be set aside if application be made, and the mistake shown while the judgment is within the power of the court. Such an agreement, even when made a rule of court, will not be enforced if made under a mistake, if seasonable application be made to set it aside, and if the judgment be no longer in the power of the court, relief, says Mr. Chief Justice Marshall, may be obtained in a court of chancery. *The Hiram*, 1 Wheat. 440, 444.

Equitable rules of the kind are applicable to sealed instruments, as well as to ordinary written agreements, the rule being that if by mistake a deed be drawn plainly different from the agreement of the parties, a court of equity will grant relief by considering the deed as if it had conformed to the antecedent agreement. So if a deed be ambiguously expressed in such a manner that it is difficult to give it a construction, the agreement may be referred to as an aid in expounding such an ambiguity; but if the deed is so expressed that a reasonable construction may be given to it, and when so given it does not *plainly* appear to be at variance with the agreement, then the latter is not to be regarded in the construction of the former. *Hogan* v. *Insurance Co.*, 1 Wash. 419, 422.

Rules of decision in suits for specific performance are necessarily affected by considerations peculiar to the nature of the right sought to be enforced and the remedy employed to accomplish the object. Where no question of fraud or mistake is involved, the rule with respect to the admission of parol evidence to vary a written contract is the same in courts of equity as in those of common law, the rule in both being that when an agreement is reduced to writing by the act and consent of the parties, the intent and meaning of the same must be sought in the instrument which they have chosen as the repository and evidence of their purpose, and not in extrinsic facts and allegations. Proof of fraud or mistake, however, may be admitted in equity to show that the terms of the instrument employed in the preparation of the same were varied or made

different by addition or subtraction from what they were intended and believed to be when the same was executed.

Evidence of fraud or mistake is seldom found in the instrument itself, from which it follows that unless parol evidence may be admitted for that purpose the aggrieved party would have as little hope of redress in a court of equity as in a court of law. Even at law, all that pertains to the execution of a written instrument or to the proof that the instrument was adopted or ratified by the parties as their act or contract, is necessarily left to extrinsic evidence, and witnesses may consequently be called for the purpose of impeaching the execution of a deed or other writing under seal, and showing that its sealing or delivery was procured by fraudulently substituting one instrument for another, or by any other species of fraud by which the complaining party was misled and induced to put his name to that which was substantially different from the actual agreement. *Thoroughgood's Case*, 4 Coke, 4.

When the deed or other written instrument is duly executed and delivered, the courts of law hold that it contains the true agreement of the parties, and that the writing furnishes better evidence of the sense of the parties than any that can be supplied by parol; but courts of equity, says Chancellor Kent, have a broader jurisdiction and will open the written contract to let in an equity arising from facts perfectly distinct from the sense and construction of the instrument itself. Pursuant to that rule, he held it to be established that relief can be had against any deed or contract in writing founded on mistake or fraud, and that mistake may be shown by parol proof and the relief granted to the injured party whether he sets up the mistake affirmatively by bill or as a defence. *Gillespie* v. *Moon*, 2 Johns. (N. Y.) Ch. 585, 596.

Parol proof, said the same learned magistrate, is admissible in equity to correct a mistake in a written contract in favor of the complainant seeking a specific performance, especially where the contract in the first instance is imperfect without referring to extrinsic facts. *Keisselbrack* v. *Livingston,* 4 id. 144; *Cathcart* v. *Robinson,* 5 Pet., 264.

Many cases support that proposition without qualification, and all or nearly all agree that it is correct where it is invoked

as defence to a suit to enforce specific performance. Little or no disagreement is found in the adjudged cases to that extent, but there are many others where it is held that the rule is unsound when applied in behalf of a complainant seeking to enforce a specific performance of a contract with variations from the written instrument. Difficulty, it must be admitted, would arise in any attempt to reconcile the decided cases in that regard, but it is not necessary to enter that field of contest and conflict in the case before the court for several reasons: 1. Because by comparing the original trust deed with the deed of the lot in question, in view of the attendant circumstances, the inference is very cogent that the second was designed and intended as a complete substitute for the first. 2. Because the proof shows to a demonstration that the consideration for the purchase of the second lot was paid in equal proportions by the father and each of the three sons. 3. Because it appears that the expensive improvements made upon the lot in question were made from the moneys of each of the three sons, advanced at the request of the father. 4. Because it appears that the family and every member of it understood from the first and throughout that the trustee held the property in trust for the mother and the three sons. 5. Because the father, from the date of the deed to the time of his death, recognized the premises as acquired and held for the benefit of his wife and their three sons. 6. Because the mother of the three sons, after the decease of the first husband of complainant, recognized her as interested in the property, and continued to do so at all times throughout her life until about the time she conveyed the lot in question to the respondent.

Both the deed and her will bear date Sept. 28, 1872, and the proofs show that she was at the time in a low, depressed state of mind, and that she departed this life within one year subsequent to the execution of those instruments. Prior to that, and throughout the whole period subsequent to the death of her husband, the proofs show that she uniformly recognized the complainant as the owner of a moiety of the lot and the improvements, and always required her to pay one-half of all repairs, taxes, insurance, and other expenses of the property.

By the terms of the original deed the property was conveyed

to the trustees, subject to the payment of taxes, assessments, and ground-rent, to and for the sole and separate use, benefit, and behoof of the mother and her three sons during her life-time, and after her death to the three sons as tenants in com-mon in equal parts, with the provision that if the mother during her lifetime should deem it advisable she might sell and convey the premises, and that in that event the further trust was raised and created that the trustees or the survivor of them, upon her application and with her consent signified by becoming a party to the conveyance, might sell and convey the lot and improve-ments for the best price which could be obtained for the same, without any application to a court of law or equity for that purpose, and to invest the proceeds thereof upon the same trusts in such other property or manner as the mother should direct, and for the same-use, benefit, and behalf.

Provision was also made that if no such sale and re-invest-ment was made during the lifetime of the mother, then the trustees were to sell the same for the sole use and benefit of the three sons or the survivor or survivors of them, share and share alike, until the youngest should arrive at the age of twenty-one years, when the trustees might sell and convey the same at the request of such survivor or survivors, and divide the proceeds to the survivor or survivors, share and share alike.

Taken as a whole the proofs show to the entire satisfaction of the court that the lot in question was purchased and con-veyed to the surviving trustee upon the same trusts as those raised and created in the first deed, and that the trustee, through mistake, failed to have those trusts properly declared in the deed of trust to him as he should have done, and that the prayer of the bill of complainant, that the deed of the lot and improvements in question ought to be reformed and the rights of the complainant be ascertained and adjudged as if the deed in question contained the same trusts as those raised and created in the original trust deed is reasonable and proper and should be granted.

Courts of equity, beyond all doubt, possess the power to grant such relief, and the proofs, in the judgment of the court, are such as to entitled the complainant to such a decree, unless

the remaining defence set up by the respondent must prevail. *Cooper* v. *Phibbs*, Law Rep. 2 Ch. Ap. 149, 186 ; *Cochrane* v. *Willis*, 34 Beav. 359, 366. Such a decree, of course, cannot now be made against the trustee, as he is not living; but the executors, as contended by the complainant, are competent to perform that duty, and she prays that the decree may be adapted to the present state of the parties.

Suppose all that is true, still it is contended by the principal respondent that the decree below is correct, because the claim is barred. Much discussion of that defence will not be necessary, beyond what is required to ascertain the facts.

When the father died, the complainant was living on the premises, and she continued to reside there most or all the time during the widowhood of the mother of her first husband, except while she lived with her second husband, and when he died she returned to live with her mother-in-law. During all that time the proofs show that she was constantly recognized as the lawful heir to the estate of her deceased husband, until about a year before the decease of the mother, who also resided on the premises. Prior to that, the rights of the complainant were unmistakably recognized, and nothing of consequence had occurred to indicate any intent to call her just right in question. Soon after that, however, the respondent commenced an action of ejectment against her to recover possession of the entire lot and improvements, she still being in possession, and doubtless hoping and expecting that her rights would yet be acknowledged without the necessity of expensive litigation. Expectations of the kind not being realized, she filed the present bill of complaint. Laches are imputed to her; but the court, in view of the circumstances and of the embarrassments growing out of the obvious defects in the conveyance intended to secure her rights, is of the opinion that the evidence of laches is not sufficient to bar her right to recover in the present suit. Without more, these remarks are sufficient to show that the defence cannot be sustained, and it is accordingly overruled.

Two or three remarks will be sufficient to show that the objection that the Circuit Court has no jurisdiction to enter the required decree against the executors of the deceased trustee cannot be sustained. Jurisdiction as between the complainant

and respondent is unquestionable; and, if so, it is clear that the fact that the trustee if living was a citizen of the same State with the complainant would not defeat the jurisdiction in a case where he is a mere nominal party, and is merely joined to perform the ministerial act of conveying the title if adjudged to the complainant. Where that is so, the executor, in case of the decease of the trustee, if authorized by the law of the State to execute such a conveyance, may also be joined in the suit under like circumstances merely to accomplish the like purpose. Where the real and only controversy is between citizens of different States, or an alien and a citizen, and the plaintiff is by some positive rule of law compelled to use the name of another to perform merely a ministerial act, who has not nor ever had any interest in or control over it, the courts of the United States will not consider any others as parties to the suit than the persons between whom the litigation before them exists. *McNutt* v. *Bland*, 2 How. 9, 15; *Browne* v. *Strode*, 5 Cranch, 303; *Coal Company* v. *Blatchford*, 11 Wall. 172, 177.

Cases arise in the Federal courts in which nominal or even immaterial parties are joined, on the one side or the other, with those who have the requisite citizenship to give the court jurisdiction in the case; and where that is so, the rule is settled that the mere fact that one or more of such parties reside in the same State with one of the actual parties to the controversy will not defeat the jurisdiction of the court. Decisive authority for that proposition is found in a recent ruling of Mr. Justice Miller, in which he states to the effect that mere formal parties do not oust the jurisdiction of the court, even if they are without the requisite citizenship, where it appears that the real controversy is between citizens of different States. *Arapahoe County* v. *Kansas Pacific Railway Co.*, 4 Dill. 277, 283.

Nothing is claimed of the executors in this case except that they shall perform the ministerial act of conveying the title, in case the power to do so is vested in them by the law of the State, and the court shall enter a decree against the principal respondent to that effect. From all which it follows that the complainant is entitled as between herself and the principal respondent to the relief prayed in the bill of complaint; but

the court, in view of all the circumstances, will not proceed to determine either the proportion of the trust property which belongs to the complainant or the amount she is entitled to recover of the said respondent. Instead of that, those matters are left to be ascertained and determined by the Circuit Court, with authority, if need be, to refer the cause to a master to report the facts, with his opinion thereon, subject to the confirmation of the Circuit Court.

Executors of the trustee, in such a case as the complainant alleges, are under the law of the State the successors of the deceased trustee, and that as such they may execute whatever remains executory in the trust at the time of his decease ; from which it would follow, if that be so, that it will be the duty of the executors of the deceased trustee in this case, when the rights of the complainant are fully ascertained, to make the necessary conveyance to perfect her title to the same extent as the trustee might do if in full life. Express authority is reserved to the Circuit Court to ascertain the rights of the complainant as if the trust-deed was reformed, and to make the necessary decree to perfect her title in such mode and form as the law of the State and the practice of the State courts authorize and provide. *Crafton* v. *Beal*, 1 Ga. 322 ; *Brown* v. *Tucker*, 47 id. 485.

Costs in this court will be taxed to the principal respondent in favor of the complainant, but no costs will be allowed against the other two respondents.

Decree will be reversed and the cause remanded for further proceedings in conformity with the opinion of the court.

*So ordered.*