NORTON *et al. v.* KELLOGG *et al.*

*(Circuit Court, D. Kansas.* February 24, 1890.)

TRUSTS—EQUITY JURISDICTION—PARTIES.

Where on dissolution of a corporation, owning a large number of town lots, such lots are given to a committee of stockholders, to be used for the benefit of the town, and the committee conveys the same to the mayor of the town, who conveys them to various persons, with the assent of the committee, a court of equity will not, after the lapse of 13 years, inquire into the execution of the trust by such committee, in a suit between the stockholders of the corporation, to which the mayor's grantees are not parties.

In Equity.

*Riggs & Nevison,* for complainants.

*Rossington, Smith & Dallas,* for respondents.

FOSTER, J. This is a bill presented to this court by three stockholders of a corporation known as the "Arkansas City Town Company" against the other stockholders and officers of said corporation, for the purpose of settling the business of the company, and distributing alleged assets among the several parties entitled thereto. The corporation was organized in July, 1871, for the purpose of selecting, laying out, and platting a town-site into lots, blocks, streets, alleys, and parks, and for the occupation, sale, and disposal of the same, and the corporation became dissolved, by the expiration of the time limited in its charter, in July, 1881. The complainants, among other things, aver "that prior to and at the expiration thereof said corporation was the owner of a large amount of property, consisting of about five hundred lots in said city of Arkansas City and other property, and that said property has not been sold or conveyed, or in any manner disposed of, by said corporation, or by any one lawfully acting on its behalf, and that its title thereto has never been lawfully divested, but that the same is corporation property, although many of said lots are now occupied by divers persons adversely, and in disregard of the rights of your orators, and the other persons who are interested therein; and that said property should be recovered, reserved, and disposed of for the benefit of those who contributed the money for the purchase thereof, or their assigns." The respondents admit the organization of the corporation, and also the averments as to the stockholders and officers, etc.; also that said corporation was the owner of a large amount of real estate now embracing the town-site of Arkansas City; but they deny that, at the time of its dissolution, it had any real estate or other property undisposed of, and aver that there is no property or assets to be accounted for or distributed. The respondents, in answer to interrogatory No. 4 of complainants' bill, allege as follows:

"In answer to interrogatory four, said defendants say that at the meeting held on the 31st day of July, 1871, when the final dividend was made of the property of said corporation, the following resolution was passed: ' ARKANSAS CITY, KANSAS, July 31, 1871. Arkansas City Town Company met at the school-house, Arkansas City. On motion, resolved, that the lots in Arkansas

City be divided as follows: To each original interest, 210,—divided into thirty certificates of stock, each drawing seven lots,—and that the excess of lots, remaining after the giving of the lots already voted, remain as the property of the company, to be used under control of the executive committee of the company for the benefit of the town. Adjourned.'"

The respondents further allege:

"That no money was in the hands of the executive committee to pay the taxes upon said lots, and no provision was made whereby the taxes and the expenses of conveying said lots should be met and paid. That thereupon the executive committee entered into an arrangement with the mayor of the town of Arkansas City, whereby said lots should be conveyed to him, said mayor, and to his successors in office; and that the taxes upon said lots, and the cost of conveying said lots, should be met and paid by the said mayor; and that said lots should be conveyed in accordance with the purpose for which the same were intrusted to the executive committee to be conveyed, namely, for the benefit of, and for the promotion of, the interests and welfare of said town, free of charge, to such persons as would come in and establish themselves and settle in said town, and would improve said property, and would thereby aid and assist in making the property owned by the shareholders of said town company more valuable. That said conveyance was made, as appears by certified copy of deed hereto attached and marked 'Exhibit A,' and that said trust was duly, honestly, and faithfully administered, in accordance with the best interests of said town company, and for the best interests of said town of Arkansas City, and to the highest advantage of the members of said corporation, by the said executive committee; and the mayor of said city conveyed said lots, by and with the advice, counsel, and approbation of said executive committee, and in due performance of the trust devolved upon said executive committee. Said defendants, further answering, say that all of said lots have been conveyed to divers and sundry persons for and in consideration of the guarantied location and aiding in promoting, and building up and advancing, the fortunes of said Arkansas City, and have by said several grantees been accepted in good faith, who have paid therefor by making lasting and valuable improvements upon said property, and by personally aiding, assisting, and extending their means to the promotion of the growth of said city, and have largely enhanced the value of the property owned by the members of said corporation."

A copy of the deed from the executive committee to the mayor of the 500 lots, in trust for the use and benefit of the city, and dated October 29, 1875, is attached to the respondents' answer.

This case is submitted on the bill and answer; and hence the allegations of the bill, and the admissions and averments of the answer, present the whole case. It may be assumed that the whole question turns on the matter of the lots placed by the corporation at the disposal of the executive committee for the benefit of the town. It does not appear that there was any other property of the corporation on hand at the time of its dissolution. It is plain there can be no conclusive adjudication as to the title of these lots without the presence in court of the purchasers of the same under the mayor's deeds. It is doubtless the purpose of the complainants to get the matter in shape, by this proceeding, so each shareholder, or the officers of the defendant corporation for the whole, may bring suit at law against the present holders of the property to determine the title.

It would be idle for this court to make any decree in the case if it appears that the complainants could not, in law or equity, derive any benefit from it; nor will a court of equity aid parties in an unconscionable transaction, either by its own decree direct, or by removing obstacles to a proceeding at law. It is averred by the complainants that the executive committee did not properly execute the trust imposed on them, and that the deed was not properly executed in form. Whether the executive committee failed to execute the trust, within the intent of the resolution of the corporators, may well be questioned. These lots were to "remain as the property of the company, to be used under the control of the executive committee of the company for the benefit of the town." Here is a very wide discretion and power vested in the committee. They were to use the lots for the benefit of the town. They might sell them at any price they saw fit, or could give them away, or could make such disposal of them as in their judgment would best serve the interests of the town, and in so doing also benefit the town company. It is by no means apparent, under the circumstances, that this object was not best accomplished by turning the lots over to the city itself. It surely was better than to allow them to be sold for taxes, and consumed in costs, penalties and litigation. Besides, the answer avers that the tract was probably extended and the lots conveyed, through the mayor, to divers parties, who made valuable improvements, and they assisted in building up the town, etc. It is more questionable whether the deed to the mayor could be legally executed in the manner it was, by the executive committee alone. Under section 4, c. 22, Gen. St. 1868, it should have been signed by the president, and attested by the seal of the corporation. It is asserted by the respondents that the act of 1887, c. 115, reached and cured defects of this kind. However that may be, if the defect in executing the trust was only in the manner and form of making the deed, and not in the purpose sought to be attained, there can be little doubt but that equity would intervene to protect the purchasers, and compel a proper conveyance. *Walden* v. *Skinner*, 101 U. S. 583; *Hunt* v. *Rousmaniere's Adm'rs*, 1 Pet. 1–13. Then, so far as this defect is concerned, it cannot avail the corporators, officers, or shareholders of the company. Indeed, when we consider the long time which has elapsed since that conveyance was made, being about 13 years, without objection from these complainants, the valuable interests of other parties which have intervened and grown up on that foundation of title, there is no superior equity in favor of the complainants to induce the court to enter into a minute examination of, or to apply a strict construction to, the execution of this power by the executive committee. The bill of the complainants will have to be dismissed.

NOTE BY THE COURT. After the foregoing opinion was filed, owing to a misunderstanding of counsel as to the submission of the case, plaintiffs were allowed to file replication to defendants' answer, and the cause was continued for further hearing.