## SANDERS v. MONROE et al.

(Court of Appeals of District of Columbia. Submitted January 8, 1926. Decided February 1, 1926. Rehearing Denied February 27, 1926.)

### No. 4294.

**1. Reformation of instruments ⊗⇒17(1).**

If mistake is satisfactorily proved equity will reform contract to conform to parties' intent.

**2. Reformation of instruments ⊗⇒45(8)—Evidence held to show that trust deed was not intended to cover note, thereafter acquired by mortgagee, as provided in comtemporaneous written agreement.**

Evidence *held* to show that trust deed was not intended to cover a note "hereafter acquired" by mortgagee, as provided in contemporaneous written agreement.

**3. Reformation of instruments ⊗⇒45(8)— Plaintiff's testimony that he could not read instrument, which he subsequently read with difficulty, held not to preclude relief.**

That mortgagor, who signed written agreement as to debts secured by trust deed without reading it, testified that he could not read, but subsequently read it with some difficulty, did not preclude him from having it reformed, especially where he testified that he failed to read it because of his confidence in mortgagee bank's officials.

**4. Reformation of instruments ⊗⇒25.**

Negligence in failing to read instrument must amount to failure of positive legal duty to justify withholding of equitable relief.

**5. Reformation of instruments ⊗⇒25—Mortgagor's failure to read agreement as to debt covered by trust deed held not such negligence as to preclude relief.**

Mortgagor signing, without reading, agreement as to debts covered by trust deed, because of his confidence in mortgagee bank, in which he was depositor, *held* not so negligent as to deprive him of right to reformation of agreement, especially as its technical language would have required elucidation.

**6. Reformation of instruments ⊗⇒25.**

Failure to read instrument prepared by other party, because of confidence in latter, furnishes very narrow ground for denying reformation.

Appeal from Supreme Court of District of Columbia.

Suit by Joe Sanders against Mary G. Monroe and others for reformation of a written instrument. From a decree of dismissal, plaintiff appeals. Reversed and remanded.

H. W. Wheatley, of Washington, D. C., for appellant.

J. I. Peyser, G. E. Edelin, T. D. Peyser, and P. S. Peyser, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and GRAHAM, Presiding Judge of the United States Court of Customs Appeals.

ROBB, Associate Justice. Appeal from a decree in the Supreme Court of the District of Columbia dismissing appellant's bill for the reformation of a written instrument and for other appropriate relief. The substance of the averments of the bill is as follows:

Appellant, hereinafter referred to as plaintiff, was the owner of real estate in this District incumbered by a first deed of trust for $4,000. He was indebted to the Security Savings & Commercial Bank, and, that institution requiring security, on March 7, 1923, a second deed of trust was executed, reciting that plaintiff was indebted in the sum of $3,000. No money passed. At the same time there was executed by plaintiff, at the request of the bank, a paper writing in the form of a letter, a copy of which was not furnished plaintiff, and "which was represented and stated by said bank to be an agreement, in accordance with the above statement, and to the effect that it was to guarantee money which the plaintiff had borrowed from the said bank." Plaintiff, relying upon these statements, signed the paper without reading it.

On January 26, 1924, "all moneys which the plaintiff had borrowed from said bank had been reduced, so that the total balance due thereon was $550 and interest." Thereupon plaintiff tendered the amount due and demanded the release of the deed of trust and the return of the note thereby secured. This demand was refused, the bank informing plaintiff that it had become the owner of a note for $2,100, which had not yet matured, and on which plaintiff was the maker and

the other party indorser, and that the bank claimed this note so discounted was secured by the deed of trust. Plaintiff avers the note was not so secured, and that the paper writing, if capable of such construction, was executed through mutual mistake. The writing in question reads as follows:

"March 7, 1923.

"Security Savings & Commercial Bank, Washington, D. C.—Gentlemen: Inclosed please find second deed of trust of $3,000, dated March 7, 1923, secured on sublot 21, square 481, which the undersigned places with you as additional security for the payment of all notes and other liability or liabilities, direct or contingent, due or not due, by the undersigned to the said bank, whether now existing or hereafter incurred, or acquired by said bank.

"Yours very truly [Signed] Joe Sanders."

In its answer the bank avers that the security was to be "for the then present existing, unsecured indebtedness aforesaid, or for any future indebtedness, direct or contingent, for the reason that it was understood that the plaintiff would continue to be a patron of said bank and would continue to apply for loans therefrom; * * * that defendant does not know whether or not the plaintiff read said paper before he signed it, nor is it material; that plaintiff had sufficient opportunity to read said paper. * * * The said letter of March 7, 1923, was not made or signed through any mistake of any party, but was a solemn agreement made and entered into by the plaintiff with full knowledge thereof and of its purpose and scope."

At the trial plaintiff testified that he had been a patron of the bank for some time, and that he did not read the paper in question because of his confidence in the officials of that institution. It appears from a statement of the court to counsel that the witness was not "fluent in expressing himself in our language." On cross-examination he was asked whether he understood, when this second deed of trust was executed, whether it was not to be held as collateral for his indebtedness, and replied: "For the money I owed, yes." He then was asked, "Simply for the money that you then owed?" and his answer was, "Yes, sir."

The vice president of the bank, who conducted negotiations leading up to the execution of the deed of trust and paper in question, testifying for the bank, stated: "Some time in the first part of January, 1923, Mr. Sanders said to me that he had a $4,000 first trust on his property at the Lincoln National Bank for collection; it was then overdue and they were pressing him. I agreed to make the loan for him as a first trust, if he would give us a second trust to secure that which he then had borrowed, and of course that which he might thereafter borrow. *. * * Mr. Sanders was a depositor of ours, and we had loaned him considerable money. In our opinion he was slipping. I wanted to continue to help him, and did not feel we were justified in doing it unless we had security for what we were advancing, and at my suggestion he gave me security, so he could continue doing business—borrow of us as he went along in his business."

It was not disputed that the amount plaintiff offered to pay the bank in liquidation of his indebtedness covered all that he had borrowed from the bank up to that time, and it was admitted that, when informed of the acquisition of the $2,100 note, he immediately protested that it was not covered by the trust agreement.

Plaintiff was recalled in rebuttal, his counsel stating that he wished to show the court just how much plaintiff could read, and, in answer to questions by the court, plaintiff stated he could not read the paper in question, although he was a naturalized American citizen. When the court remarked that it was strange an American citizen could not read the English language "the witness then slowly and in a halting manner, but correctly, read aloud the letter of March 7, 1923."

[1] Power to reform written contracts for fraud or mistake is everywhere conceded to courts of equity, and if the mistake is satisfactorily made out, equity will not hesitate to so reform the contract as to make it conform to the precise intent of the parties. Ivinson v. Hutton, 98 U. S. 79, 82, 25 L. Ed. 66; Simmons Creek Coal Co. v. Doran, 12 S. Ct. 239, 245, 142 U. S. 417, 435, 35 L. Ed. 1063. In the latter case, the court said: "The jurisdiction of equity to reform written instruments where there is a mutual mistake or mistake on one side and fraud or inequitable conduct on the other, is undoubted; but to justify such reformation the evidence must be sufficiently cogent to thoroughly satisfy the mind of the court." See, also, Merritt v. Kay, 295 F. 973, 54 App. D. C. 152, 155; 23 R. C. L. 320, 321, 322; 34 Cyc. 907.

[2] In the present case, the evidence leaves no room for doubt as to the essential facts.

While the plaintiff in his testimony was led to say that the agreement was to cover merely what he had borrowed, it clearly appears that this was not his real understanding of the agreement, for he states in his bill and in his testimony that he tendered to the bank all he had borrowed from it, and this averment and statement are unchallenged by the bank. The testimony of the bank official exactly coincides with what we have found to have been plaintiff's understanding of the agreement, for he states unequivocally that it was "to secure that which he then had borrowed, and of course that which he might thereafter borrow." It must be assumed that, had the bank representative understood the agreement went farther than this, and was as now claimed, he would have so testified. It is perfectly apparent, therefore, that the written agreement did not in fact conform to the true agreement.

[3] On behalf of the bank it is insisted, however, that plaintiff is not entitled to relief because, first, he said on the stand he could not read, and then demonstrated he could; and, second, he was culpably negligent in not reading the paper writing. Having in mind that the plaintiff, as the learned trial justice himself observed, was not "fluent in expressing himself in our language," and that he was less fluent in reading it, it is not strange he should have experienced some embarrassment in the courtroom. In his testimony he did not contend that he failed to read the paper writing because of inability to read, but rather that his failure so to do was attributable to his confidence in the officials of the bank.

[4, 5] It has been generally held that, to justify the withholding of equitable relief because of failure to read an instrument, the negligence must be so gross as to amount to a failure of a positive legal duty. Essex v. Day, 1 A. 620, 52 Conn. 483; Los Angeles R. Co. v. New Liverpool Salt Co., 87 P. 1029, 150 Cal. 21; West v. Suda, 36 A. 1015, 69 Conn. 60; Lloyd v. Hulick, 63 A. 616, 69 N. J. Eq. 784, 115 Am. St. Rep. 624; 34 Cyc. 949. Considering the circumstances of the present case, we are clearly of the view that plaintiff is not guilty of such negligence as to deprive him of equitable relief. The bank had suggested to him the doing of a certain thing, namely, the execution of a second deed of trust to cover what he had borrowed and what he might borrow. He was a depositor in the bank and, from his testimony, apparently regarded the officials of the bank much as he might have regarded public officials.

In other words, his confidence in them was such that the necessity of reading the agreement never occurred to him. But, even had he read it, its technical language would have required elucidation, and we must assume, in view of the testimony of the bank official who prepared the agreement, that plaintiff would have been informed that it embraced their verbal agreement and nothing more. Plaintiff's reading of the agreement, therefore, would not have changed the situation.

[6] Moreover, the contention that one party to an agreement should suffer prejudice through failure to read the agreement prepared by the other, when that failure grows out of confidence in the other, furnishes a very narrow ground for withholding equitable relief. Stern v. Moneyweight Scale Co., 42 App. D. C. 162. It would be unconscionable to permit the bank, under the facts of this case, to bring within the scope of the real agreement something not contemplated by it.

The decree is reversed, with costs, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.