ELENA CONTI vs. JULIA R. FISHER et al.

NOVEMBER 4, 1926.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

(1) Equity Pleading. Statute of Frauds.

Where a party makes no claim for the benefit of the statute of frauds, either by pleadings or otherwise, the court sua sponte does not interpose it for him.

(2) Equity Pleading. Statute of Frauds. Reformation. Deeds. Performance.

The payment of the purchase price for real property plus the taking of actual possession and occupancy of premises constitutes a part performance which takes a case out of the statute of frauds.

(3) Statute of Frauds. Oral Evidence. Reformation. Deeds.

Macomber v. Peckham, 16 R. I. 485, was not reversed or modified by Carroll v. Ryder, 34 R. I. 383.

(4) Deeds. Reformation. Statute of Frauds. Oral Evidence.

Two lots were conveyed by deed describing them only by number on a plat. There was a fence on the platted lot named in one deed. The vendees bought according to the existing boundary lines on the property as shown by the fence. One lot delineated on the plat referred to in one deed showed the northerly line to be six feet south of the fence.

Complainant for four years had been in possession of the premises within the fence lines and including the strip in question and respondent had never been in possession or occupation thereof.

Held, that irrespective of the question whether oral evidence of any kind relating to the intention of the parties was admissible, the evidence of what was done in pursuance of the oral contract showed sufficient performance on the part of complainant to remove the case from the statute of frauds.

BILL IN EQUITY. Heard on appeal of respondent and dismissed.

BARROWS, J.   Heard on appeal from a final decree of the Superior Court ordering reformation of two deeds and incidentally enjoining respondents Boscaglia from prosecuting an action of trespass quare clausum against complainant.

The facts as found by the lower court show that respondent Fisher sold certain real estate with a dwelling and barn thereon on Metcalf street, in Providence, to complainant and about three months later sold an adjoining parcel

likewise with dwelling to respondents Boscaglia. The lots were conveyed by deed describing them only by number on a plat. There was a fence upon the platted lot named in the Boscaglia deed. It had stood for a long time. To both purchasers, prior to the sale, their respective properties were pointed out and the trial justice finds "both clearly purchased according to the existing boundary lines then on the property as shown by the fences". The lot delineated on the plat referred to in the Conti deed showed the northerly line to be six feet south of the fence and the lot delineated on the plat referred to in the Boscaglia deed showed its southerly line to be identical with the aforementioned northerly line of the Conti deed. The result, according to the deeds, was that the Boscaglias seemed to have title to a strip six feet wide extending the full depth of the lot between the fence and the division line as shown on the plat. This strip neither the Boscaglias had intended to purchase nor Fisher to sell to them. Written receipts for deposits at the time of the making of the contracts of sale were given by Fisher to both Conti and Boscaglias and the deeds supposedly pursuant thereto followed. These receipts referred to the land sold as Nos. 105 and 109 Metcalf street, respectively. They had been lost prior to the trial and the introduction of oral evidence of their contents, together with other oral evidence of the intentions of the parties, over respondents Boscaglia's objections based upon the statute of frauds furnishes the basis for respondents' present contentions.

Both purchasers entered into occupation of their respective curtilages, complainant occupying the house and barn,— the latter of which rested upon a portion of the six foot strip now in dispute,—and the respondents Boscaglia occupying the house within the fence lines on their lot but at no time exercising dominion either real or apparent over the six foot strip. After four years of such occupation the mistake in the deeds was discovered and the present litigation followed.

The court found on the evidence that a mutual mistake had been made in the descriptions in the deeds whereby Conti received less than had been purchased and the Boscaglias more. The decree recites these mutual mistakes and gives directions concerning their rectification. Respondent Fisher, who admitted the mistake and joined in the prayer of the bill, is ordered by the decree to clear the record title of complainant by releasing all of her right, title and interest in the strip in question after the Boscaglias have quitclaimed to complainant their interest in said six foot strip and the Boscaglias are directed to discontinue prosecution of the law suit against Conti for trespass.

Respondents Boscaglias say a single point is presented, viz., "whether such a conveyance of real estate as prayed for by the bill and ordered by the decree to be made by respondents is within the statute of frauds." Gen. Laws 1923, Ch. 333, Sec. 6 (4854).

The general jurisdiction of equity to correct mistakes is not questioned nor the right therein to introduce parol evidence to show mutual mistakes and seek reformation of written instruments in general. *Walden* v. *Skinner,* 101 U. S. 577. It is urged, however, that where a contract, such as for the sale of land, is by statute required to be in writing and an omission from the deed causes a conveyance of less land than was orally agreed upon, parol evidence while admissible to secure a rescission is not admissible to secure a reformation and enforcement of the contract as reformed; such use of the evidence is said to charge a respondent upon a contract not in writing in violation of the statute of frauds. *Macomber* v. *Peckham,* 16 R. I. 485, and a leading case, *Glass* v. *Hulbert,* 102 Mass. 24, take this view.

Complainant and the lower court regard the instant case as ruled not by the *Macomber* case but by *Carroll* v. *Ryder,* 34 R. I. 383. From the rescript of the trial justice it appears that some uncertainty may exist as to whether the *Ryder* case overrules or limits the *Macomber* case. The doubt has been created, perhaps, by failure of the later case

to refer to the earlier case. The contradictory results of the two cases give an appearance of inconsistency. The records, however, as they came before the Supreme Court, show that in the *Macomber* case admission or rejection of oral evidence of the agreement made before the execution of the deed was the sole question for determination. The effect of the statute of frauds was the vital issue. Of it the court said, at page 486: "the naked question (is), whether oral testimony will be received in equity for the purpose of reforming a written contract for the sale of real estate on the ground of mutual mistake, and of enforcing it specifically when reformed." In the Ryder case we have carefully examined all the papers and the transcript of evidence. Neither pleadings nor evidence required reconsideration or reversal of the doctrine of the *Macomber* case. No reference to or reliance upon the statute of frauds anywhere occurs in the pleadings and in the transcript there is only an incidental reference thereto prior to the introduction of the written receipts for the purchase money. The rescript of the trial justice therein makes no allusion to the statute of frauds. It rests solely upon complainant's evidence falling far short of convincing the court that a mutual mistake had been made. Where a respondent or defendant makes no claim for the benefit of the statute of frauds, either by pleadings or otherwise, the court *sua sponte* does not interpose it for him. *League* v. *Davis*, 53 Tex. 9; *Tarleton* v. *Vietes*, 6 Ill. 470; *Lawrence* v. *Chase*, 54 Me. 196; *Hackworth* v. *Zeilinger*, 48 Mo. Ap. 32; *Cruse* v. *Findlay*, 16 Misc. 576; *McDonald* v. *Place*, (Vt.) 90 Atl. 948; 33 A. & E. Ann. Cas. (1914 C) p. 1243. Moreover, in the *Ryder* case if the statute had been set up the facts disclosed that the vendee paid the full purchase price, took actual possession and occupied for four years the premises alleged to have been omitted from the deed. There was full performance on complainant's part. Whether the original contract of the parties to buy and sell was in writing or oral, they acted as if the deeds had fully carried it out. It was

only the paper evidence, viz., the deeds, which left a cloud upon the vendee's title. Whatever view has been taken of (2) the effect of the statute of frauds upon the offer of oral evidence to prove error in the deed, and to seek enforcement as corrected, all authorities recognize that the payment of the purchase price plus the taking of actual possession and occupancy of premises constitutes a part performance which takes a case out of the statute. Even *Glass* v. *Hulbert*, at p. 32, says, "that the purchaser has been let into possession in pursuance of a parol agreement has been very generally recognized as sufficient to take it out of the statute." And the *Macomber* case, at p. 486, says of its facts: "Nor is it a case in which it is claimed that the contract is taken out of the operation of the statute of frauds by part performance on the part of the complainant." Payment plus possession as part performance to take a case out of the statute was recognized in *Tingley* v. *Jacques*, 43 R. I. 367. See also 2 Pom. Eq. Juris. 4th ed. § 863.

We find nothing in the *Ryder* case that reverses or modifies the *Macomber* case in spite of the fact that a strong current of modern authority is running against the latter's doctrine. See note in L. R. A. 1917 A. p. 573.

While the question of admitting oral evidence to prove a contract within the statute of frauds was raised in the case at bar, it was not the sole question raised and the other elements here present bring the instant case, as said by the trial court, nearer to the *Ryder* case. There were written evidences of the contracts. The receipts did not show the boundary lines and required oral evidence to make them definite. The contract had been fully executed.

Unlike the *Ryder* case, however, use of parol evidence concerning the present contract required more than explanation because the written receipts had been lost. Questions of the right to use secondary oral evidence at all when objected to because of the statute of frauds and if usable the extent of its use to explain the meaning of the receipts were suggested in the lower court. They were not

(4) determinative, however, because that court found that complainant for four years had been in possession and occupation of the premises within the fence lines and including the strip in question and that respondents Boscaglia had never been in possession or occupation thereof. The record comes to us with the agreement that the facts are as found by the trial justice, and upon such a finding neither was he nor are we called upon to decide upon the admissibility of purely oral evidence where the statute of frauds is involved. Irrespective of the question whether secondary oral evidence or any other oral evidence relating to the intention of the parties was admissible the unquestioned evidence of what the parties did in pursuance of the oral contract showed sufficient performance on the part of complainant to remove the case from the statute of frauds and to warrant the decree. *Conlin* v. *Masecar*, 80 Mich. 139. On the facts it is idle to urge that complainant's possession was only of the land described in her deed and that respondents Boscaglia's possession was in contemplation of law according to their deed. The contention of the respondents therefore that the only evidence upon which the trial court could base its decision was oral testimony used in defiance of the statute of frauds can not be sustained.

Respondents Boscaglia's appeal is dismissed and the cause is remanded to the Superior Court for further proceedings.

*Patrick P. Curran, Hoyt W. Lark, Green, Curran & Hart,* for complainant.

*Charles R. Easton,* for respondents.