**HAWKINS et al. v. FRADKIN et al.**
No. 9929.

United States Court of Appeals
District of Columbia Circuit.

Argued May 13, 1949.

Decided Sept. 26, 1949.

Mr. Curtis P. Mitchell, Washington, D. C., with whom Mr. B. Dabney Fox, Washington, D. C., was on the brief, for appellants.

Mr. Mark P. Friedlander, Washington, D. C., for appellees.

Mr. Jack Politz, Washington, D. C., also entered an appearance for appellees.

Before CLARK, WILBUR K. MILLER and PRETTYMAN, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

William Henry Hawkins, one of the appellants, sued in the United States District Court for the District of Columbia to reform a deed which he had given to the appellees, Fradkin and Singer, alleging that it failed fully to conform to the antecedent contract, in that through mistake there had been omitted from it an easement for the use and benefit of Hawkins' remaining property. After the suit was filed, the appellant, Clyde M. Moody, was added as party plaintiff because he had purchased the lot for which the easement was claimed.

Prior to June 17, 1941, Hawkins held title in fee simple to Lot 927 in Square 2877 in the District of Columbia, the lot extending through the square from Georgia Avenue to 8th Street. The appellees, Fradkin and Singer, partners doing business under the name of American Linen Service Company, were the owners of Lot 805, which fronts on 8th Street and extends back eastwardly 100 feet and which lies immediately north of the western portion of Lot 927.

Lot 805 was then, and for many years had been, servient to a passway along its southern border which had been established by grant as an outlet to 8th Street for Lots 924, 925 and 926 which lie to the east of Lot 805 and front on Georgia Avenue. On the plat

8th STREET, N.W.

GEORGIA AVENUE

which accompanies this opinion, that passway is designated as "Old alley."

In 1941 Fradkin and Singer desired to acquire from Hawkins the western end of Lot 927 so as to enlarge the business establishment which they had on Lot 805. In order so to enlarge their place of business it was obviously necessary to close the old alley. Under the terms of the grant by which that alley had been established, it could not be closed until a substitute passway had been provided. Fradkin and Singer did not desire to buy the western end of Lot 927 unless they could close the old alley and replace it with a passage designated on the plat as "New passway." So, when on June 17, 1941, they contracted to purchase the 8th Street end of Lot 927, they carefully provided as follows: " * * * this contract is and shall be subject to and contingent upon the ability of the American Linen Service Co., its successors or assigns, to arrange for a private alley over and across the within described property, to serve the rear of Lots Nos. 924, 925, and 926, and the remaining portion of Lot No. 927, all in Square 2877, the same being intended to replace, and to permit the closing of, the present private alley now in use across Lot 805, Square 2877, for the benefit of said Lots Nos. 924, 925, 926, and 927; * * *."

Pursuant to the provision of the contract above quoted, Fradkin and Singer on August 4, 1942, took the first step in an effort to free their Lot 805 of the servitude to which it was subject. On that day they filed in the United States District Court for the District of Columbia Civil Action No. 16,-656 against all persons who had any legal or equitable interest in Lots 924, 925 and 926, in which they prayed the court to permit the closing of the old alley and the establishment of the new passway to replace it, in the manner indicated on the plat. The appellant, Hawkins, joined them as plaintiff because at that time he was still the owner of all of Lot 927, the western part of which was to be the site of the substituted passway. He desired to aid in the accomplishment of the substitution because his sale of the west half of his Lot 927 depended upon its consummation.

The complaint in Civil Action No. 16,656 set forth in general terms the agreement of June 17, 1941, between Fradkin and Singer on the one hand and Hawkins on the other, and the plan of Fradkin and Singer to open the new passway shown on the plat to afford an outlet for the owners of Lots 924, 925 and 926 from the area marked "R. of W." to 8th Street to replace the old alley on Lot 805.

On April 26, 1944, the District Court adjudged that Fradkin, Singer and Hawkins were entitled to substitute the proposed new right of way over the western end of Lot 927 for that theretofore existing along the south side of Lot 805. It was decreed, therefore, that the owners of Lots 924, 925 and 926 be divested of all right, title and estate in and to the eight-foot alley over Lot 805 and that they be vested with a perpetual right of way over the western portion of Lot 927 for the use and benefit of Lots 924, 925 and 926. As the original Lot 927 extended to 8th Street, it had never been among the dominant estates which had used the old alley on Lot 805. Consequently it was not necessary that the judgment substituting the new passway for the old make any reference to the easement in favor of the eastern portion of Lot 927. Indeed, it would have been improper for the judgment to establish that easement, since its reservation was merely a matter of contract which had not been submitted to the court, and which could readily be covered by appropriate language in the deed. The silence of the judgment with respect to the easement here involved is therefore without significance in this case.

After the substitution of the new passway for the old had been accomplished in the manner just described, thus meeting the condition in the contract of June 17, 1941, insofar as Lots 924, 925 and 926 were concerned, Hawkins and wife on September 8, 1944, conveyed to Fradkin and Singer the western portion of Lot 927, with "the improvements, easements and appurtenances thereunto belonging." The conveyance was made subject to the right of way created by the judgment of the District Court for the use and benefit of Lots 924, 925 and 926. But the deed contained no express reserva-

tion by the grantors of the right to use the new passway for the use and benefit of the remaining or eastern portion of Lot 927, a lack which led to this litigation. Nevertheless, not only has the new passway been used since that time as an outlet from the rear of Lots 924, 925 and 926, but also it has been used and is currently being used as an outlet from the rear of the eastern portion of Lot 927.

In April 1946 a search was made of Hawkins' title to the eastern half of Lot 927 because he was about to convey the parcel to the appellant, Moody. Only then, it appears, did Hawkins realize he had failed to insert in his deed to the appellees an express reservation of the right to use, for the benefit of the eastern half of his original lot, the new passway being established by the appellees over the western half. He requested Fradkin and Singer to convey the easement to him in accordance with the contract, but they refused. Hawkins then instituted this suit to have the deed reformed to conform to the antecedent agreement. As has been said, Moody was added as a party plaintiff after he purchased the eastern half of Lot 927. From the judgment of the District Court denying the relief sought, the plaintiffs appeal.

 While it is ordinarily true, as appellees assert, that antecedent agreements, written or oral, merge in the deed finally executed and delivered, a court of equity nevertheless has power to reform a deed or other written instrument when, because of fraud or mistake, it does not express the true intent of the parties. The mistake need not be mutual. A mistake by one party ac-

companied by fraud or inequitable conduct on the part of the other will, if clearly proved, justify reformation.[1]

The appellees argue that the contract of June 17, 1941, did not reserve for the eastern half of Lot 927 the right to use the passway which Fradkin and Singer were to establish over the western half. They say the paragraph from the contract which has been quoted heretofore was concerned only with the closing of the old alley on Lot 805, and made no provision for an outlet to 8th Street from the eastern half of Lot 927.

██ But we observe that the paragraph provides for the new passway "to serve the rear of * * * the remaining portion of Lot 927". The circumstances show the aptness of the provision: obviously when the owner of the whole of Lot 927 was selling the western half fronting on 8th Street, he would deny himself access to that street unless he reserved the right to use the new passway which the grantees were bound to establish over the western half of the lot. Undoubtedly, therefore, the words just quoted were deliberately inserted in the contract. They are not to to be expunged because the inexpert draftsman concluded the paragraph by saying the new passway was intended to replace, and permit the closing of, the old alley. We interpret the contract as reserving an easement for the use and benefit of the unsold portion of Lot 927 and regard as erroneous the District Court's finding of fact that "Said Hawkins never at any time reserved the right of an easement across the property he conveyed." More-

---

1. In Walden v. Skinner, 1879, 101 U.S. 577, 584, 25 L.Ed. 963, the Supreme Court said, " * * * the rule being that if by mistake a deed be drawn plainly different from the agreement of the parties, a court of equity will grant relief by considering the deed as if it had conformed to the antecedent agreement."

In Sanders v. Monroe et al., 1926, 56 App.D.C. 132, 133, 10 F.2d 997, 998, it was said: "Power to reform written contracts for fraud or mistake is everywhere conceded to courts of equity, and if the mistake is satisfactorily made out, equity will not hesitate to so reform the contract as to make it conform to the

precise intent of the parties. Ivinson v. Hutton, 98 U.S. 79, 82, 25 L.Ed. 66; Simmons Creek Coal Co. v. Doran, 142 U.S. 417, 435, 12 S.Ct. 239, 245, 35 L. Ed. 1063. In the latter case, the court said: 'The jurisdiction of equity to reform written instruments where there is a mutual mistake or mistake on one side and fraud or inequitable conduct on the other, is undoubted; but to justify such reformation the evidence must be sufficiently cogent to thoroughly satisfy the mind of the court.' See, also, Merritt v. Kay, 54 App.D.C. 152, 155, 295 F. 973; 23 R.C.L. 320, 321, 322; 34 Cyc. 907."

over, it is clear that Hawkins omitted the reservation from the deed by mistake.

Fradkin and Singer neither plead nor attempt to prove that the omission of the reservation was due to a new agreement to omit it. They rest on the fact that the deed contains no reservation and, apparently seeking advantage [2] from Hawkins' mistake, refuse to agree to reformation. But simultaneously and inconsistently they do not object to the use of the passway by the present owner of the eastern half of Lot 927;[3] they simply oppose establishment of a legal right to that use, as contemplated by the contract. Such conduct is properly described as inequitable, regardless of the District Court's finding that Hawkins was not the victim of fraud or misrepresentation.

With the mistake on the one side and inequitable conduct on the other plainly apparent, the District Court erred in not reforming the deed.

Reversed.

2. What that advantage is or is thought to be does not appear. But the appellees might hereafter acquire Lots 924, 925 and 926, in which event the obligation imposed by the former judgment to keep the new passway open would disappear, for one cannot have an easement in his own land. If that should come about, the new passway could be closed despite the judgment in Civil Action No. 16,656, and the owner of the eastern half of Lot 927 would be barred from 8th Street if his right to use the passway were merely permissive.

3. The following excerpts from the record demonstrate this:

"The Court: And your theory is that the plaintiffs had no right to use it [the new passway]?

"Mr. Friedlander (counsel for Fradkin and Singer): They could use it. But what they claim is that they had a right of easement by either deed or prescription. They don't have either and the evidence shows they haven't either.

"Now, we are not required to give them a grant to use something. We are not objecting to them using it as established."

Fradkin, one of the appellees, was questioned and answered as follows:

"Q. As long as you have had the premises there and since your purchase of that extra portion of 927, have you made any attempt to prevent the use of that alleyway? A. Have I made any attempt to do what?

"Q. Have you prevented the occupant of the premises owned by Mr. Hawkins [the eastern half of Lot 927], have you attempted to keep him from using it? A. This alleyway that is there now?

"Q. Yes. A. No, I have never prevented anybody from using it."