BYRNE vs FT. SMITH NATIONAL BANK.

Opinion delivered  January 8, 1898.

*1.  Reformation of Mortgage—Parol Evidence.*

Where there is a mistake in the description of property in a mortgage, parol evidence is admissible to ascertain the intention of the parties to it, and when ascertained, the court should reform the mortgage so. as to make it express the intention of the parties.

*2.  Mistake in Written Instruments—When Corrected in Equity.*

In all cases of mistakes in written instruments equity will in-

terfere only as between the original parties or those claiming under them, in privity.

3. *Assignee in Deed of Assignment—Has no Greater Rights than Assignor Would Have Had.*

An assignee for the benefit of creditors and preferred creditors named in the deed stands in the same position as the assignor and takes the property assigned subject to all the equities that might be urged against the assignor, and they are not bona fide purchasers for value.

4. *Reformation of Mortgage—Laches.*

Assignor executed a mortgage to appellee upon certain cattle. Before the execution of the deed of assignment the assignee in the deed took possession of the cattle and agreed to take care of them and sell them and pay the proceeds to appellee. The mortgage called for 500 head of certain ages, the assignee found only 164 cattle of the age named in the mortgage and the proceeds from such 164 head were insufficient to pay the mortgage of appellee and the assignee filed his report to this effect. Ten days after the filing of the report the appellee filed a petition to reform the mortgage so as to include other cattle of other ages. *Held,* Appellee was not guilty of laches, and so not estopped from having said mortgage reformed.

Appeal from the United States court for the Northern district.

YANCEY LEWIS, Judge.

Ft. Smith National Bank filed a petition in equity against P. J. Byrne as assignee for Grayson Brothers and others to reform a mortgage. There was a decree for plaintiff. Defendant appeals. Reversed.

This is an appeal from the decree rendered by the United States court for the Northern district of the Indian Territory. The facts are as follows: On the 24th day of June, 1895, Grayson Bros., who were, and had been for a long time prior thereto, conducting a large mercantile busi-

ness at Eufaula, Ind. Ter., applied to the Ft, Smith National Bank for and obtained a loan of $4,000, and to secure the same executed a mortgage to the bank on the following described cattle, to wit: "500 head of cattle of the ages of two, three, and four years, running on our range on Coal creek, Creek Nation, about thirty miles west of Eufaula, Ind. Ter.; the said cattle being branded a shield on left hip and 'G 7' on left hip and 'Cross S' on left side." The note for which these cattle were mortgaged was to run 90 days. At the maturity of the note it was extended 90 days, which made it mature December 24, 1895. On the 11th day of December, 1895, Grayson Bros. made an assignment for the benefit of their creditors, making the appellants preferred creditors under their deed. P. J. Byrne, the assignee named in the deed, qualified and took charge of all property assigned, including the mortgaged cattle. The mortgagee, the Ft. Smith National Bank, consented for the assignee to manage and look after the cattle until the following spring. The court, on application of the assignee, and the consent of most of the preferred creditors, extended the time of the selling of the cattle beyond the 120 days in which the law required the property to be sold, and on the —— — day of May, 1896, the assignee rounded up all the cattle, making a list of the different ages and brands. He then sold the same, keeping the prices that each brought and the brands separate. It was then ascertained that the amount received for the ages and brands described in the Ft. Smith National Bank mortgage was not sufficient by about $1,500 to satisfy same. The assignee made his report to the court, and thereafter, to wit, on the 25th day of June, 1896, the Ft. Smith National Bank filed its petition, alleging that there was a mistake in drawing their said mortgage, and that it was the intention to cover the cattle of all ages of the brands described in the mortgage, and praying the court to reform the mortgage, and to correct said mistake, and to determine

its rights under the mortgage when so reformed. To this petition the assignee filed a demurrer, and the preferred creditors ( appellants herein ) joined in said demurrer. The court overruled said demurrer, and appellants saved their exception, and then filed their answer to said petition. After hearing the testimony and the argument of counsel, the court entered a decree holding that the petitioner was entitled to have said mortgage corrected so as to include all the cattle of any age in the brands described in said mortgage, and found that there were 97 head of cattle, of the value of $1,149, that should be included in said mortgage, and the proceeds paid over to said bank. The assignee and preferred creditors ( appellants ) excepted to the finding and decree of the court, and sued out this appeal, and ask to have the same reversed, and a decree entered for appellants.

*Denison & Maxey*, for appellants.

SPRINGER, C. J. (after stating the facts. ) Counsel for appellants assign as error the overruling of their demurrer to appellee's petition. As will be seen from the statement of the case, the petition alleged a mistake in the description of the mortgaged property, and prayed the court to reform the same, so as to correct said mistake, and that its rights might be determined according to the terms of the mortgage as it would stand when so reformed. To this petition appellants demurred, for the reason that, if the matters stated were true, they do not entitle the petitioner to the relief prayed for. The court overruled the demurrer, and permitted the petitioner to introduce testimony, over the objections of the appellants, showing the mistake in drafting the mortgage. The testimony having been conclusive as to the mistake, the court entered a decree reforming the mortgage, and allowing the appellee the proceeds of the sale of the cattle which the

mortgage, when so reformed, included.   The admission of
this testimony and the entering of this decree are the only
errors assigned by the appellants.   To sustain their conten-
tion, appellants quote the following from Mr. Cobbey's work
on Chattel Mortgages:   "The description itself is conclusive
as to what it is.   Outside evidence is only admissible to
apply the description to the proper articles. , The mortgage
itself is the only competent evidence of the contract between
the mortgagor and the mortgagee, and shows the particular
property covered by it.   It is competent to prove that the
property in question is the identical property, but not to go
further than this.   An understanding between the parties
that certain after-acquired property should be embraced in
the mortgage is only good between the parties.   As to third
parties, who have acquired an interest before the mortgagee
has taken possession of the new property, it is the same as
if there was no understanding.   The recitals of the mortgage
must govern.   Parol evidence is permissible to aid—not to
make—a description in a chattel mortgage.   It is only when
the mortgage suggests inquiry which will result in identifica-
tion of the property that parol evidence is competent to
point out and identify it.   There can be no substitution of
other property which will be bound by the agreement.   Thus,
where a mortgage was made of one horse, the mortgagor at
that time owned a sorrel horse, which, with the consent of
the mortgagee, he exchanged for a bay horse.   Held, that
the record imparted a notice of a lien upon the first, and not
upon the second, horse; upon inquiry, a person would have
found that the mortgagor then owned the sorrel horse, and
not the bay horse.   And the description cannot be enlarged,
so as to cover property not fairly within its scope, because
it refers to a schedule attached, which schedule, besides par-
ticularly describing the property referred to in the mortgage
as machinery and fixtures, also described a stock in trade of
brass and iron ware."   See 1 Cobbey, Chat. Mortg. p. 184, §

158, and cases cited.   The law as laid down in this section from Mr. Cobbey's work on Chattel Mortgages is unquestionably correct in all cases where the mortgage is introduced in evidence, in a proceeding to foreclose it, or for the purpose of proving its contents.   But the rule is otherwise in a proceeding in equity to reform a contract or mortgage so as to make it express the intention of the parties who executed it at the time it was executed.   Courts of equity have not hesitated to entertain jurisdiction to reform all contracts where there has been an innocent omission or insertion of a material stipulation, contrary to the intention of both parties, and under a mutual mistake.   1 Story, Eq. Jur. § § 154, 155.   In such case parol evidence must, of necessity, be received; otherwise, no relief could be obtained.   In case of written instruments, the relief will be granted only where there is a plain mistake, clearly made out by satisfactory proof.   Id. § 157.   But, in all cases of mistakes in written instruments, equity will interfere only as between the original parties, or those claiming under them in privity, such as personal representatives, heirs, devisees, legatees, assignees, voluntary grantees, or judgment creditors or purchasers from them with notice of the facts.   Id. § 165.   As against bona fide purchasers for valuable consideration without notice, courts of equity will grant no relief.   Id. § 166. In the case at bar it was clearly established, by satisfactory proof, that there was a mistake in the description of the cattle covered by the mortgage.   It is also conclusively shown that the court reformed the mortgage, so as to make it express the intentions of the parties who executed it.   We are therefore of the opinion that parol evidence was admissible in this case, and that the court had the right to reform the mortgage, so as to make it express the intentions of the parties to it.

*Reformation of written instrument.*

*Parol evidence.*

   The further question, however, arises in the case, whether the rights of third parties have intervened.   The

defendant, Byrne, is the assignee of Grayson Bros., who executed the mortgage. There can be no doubt of the fact that the assignee stands in the place of Grayson Bros. He takes the property in this case in trust for the benefit of their creditors, and in order to execute their wishes in the premises. Swofford Bros. and others, who are made defendants, are the preferred creditors of Grayson Bros. in their assignment, and claim under them. Hence, the case at bar is between the original parties to the mortgage, the Ft. Smith National Bank and those claiming under Grayson Bros. in privity. The assignee, Byrne, and the preferred creditors of Grayson Bros., stand in Grayson Bros.' place, and take the property assigned subject to all the equities that might be urged against the assignors. They are not in the position of bona fide purchasers for value. The preferred creditors of Grayson Bros., by their acceptance of the terms of the assignment, acquired no greater right to the property of, the assignors than the assignors themselves had. They took only that which the assignors might rightfully grant, and subject to all the equities to which they were subject. The preferred creditors had not advanced any money or credit upon the faith of the description of the property as it stood in the mortgage before it was reformed. They cannot claim any loss or extension of credit on account of the reforming of the mortgage. They would undoubtedly have accepted the benefits of their preference as creditors if the mortgage had been reformed before the assignment. The acceptance of the assignment certainly put them in no worse position than they would have been if they had refused to take under it. Whether the mortgage was reformed, or in its original form, could not have influenced their acceptance of the assignment. They were preferred as creditors, and were to be paid in full before other creditors could participate. Their acceptance was an agreement to take all they

Assignee and creditors not purchasers for value.

could possibly get,—all they were in law or equity entitled
to take.

Counsel for appellants insist that the appellee should
have asserted its claim to the cattle not covered by the mort-
gage in its original form at the time the assignment was
made or before the appellants accepted the preference given
them; that appellee knew the defect in the mortgage at the
time of the assignment, and that it should then have asserted
its claim, and made known its rights; and, not then having
asserted its rights, it is now, after other rights have inter-
vened, estopped from so doing. An examination of the
testimony in the case will disclose the fact that the appellee
was not guilty of any laches in the matter. The president
of the Ft. Smith Bank, the appellee, testified that he told
Mr. Byrne, the assignee, in the first and only conversation
he ever had with him, his (the president's) understanding of
the matter. Mr. Byrne testified that, when he rounded up
and sold the cattle, which was in May, 1896 (the assignment
having been made in December, 1895), he sent a copy of the
report of sales to the appellee. This report showed the
brands of the cattle, and how much the cattle of each
particular brand brought. He was not notified, until after
the sale, that the appellee claimed more of the cattle than
were covered by the terms of the original mortgage. But
appellee informed him that it reserved all its rights, and Mr.
Hutchings, the attorney for appellee, told him what the bank
claimed. It seems that the appellee had no means of ascer-
taining, at the time of the making of the assignment, whether
the number of cattle it claimed were covered by the mort-
gage or not. When the cattle were rounded up and sold,
and a report of sales furnished to appellee, it was discovered
by Mr. Byrne and appellee that there was a mistake some-
where, and the assignee was then notified that the bank
claimed other cattle than those mentioned in the original
mortgage. The petition to reform the mortgage was filed in

*Bank not guilty of laches.*

the United States Court at Muskogee on June 25, 1896. On the 15th day of June, 10 days previous to the filing of appellee's petition, Mr. Byrne, the assignee, filed his report in court of the sale of the cattle. In this report he stated that the Ft. Smith Bank had a mortgage on 500 head of cattle, to secure its claim of $4,000, but that he could find only "164 head of cattle of the ages and brands said mortgage covered, and that, at the prices said cattle were sold for, the 164 head covered by said mortgage only brought $2,964." This was the first authentic information that the appellee could have obtained. If the 164 head of cattle mentioned had brought a sum sufficient to pay off the bank's demand, there would have been no necessity for reforming the mortgage, even if the descriptions were erroneous. The bank, having learned all the facts, at once filed its petition in court to reform the mortgage. We cannot see wherein the bank could have acted more promptly than it did.

Entertaining these views, we are of the opinion that there is no error disclosed by the record in this case. It is therefore affirmed.

CLAYTON, THOMAS, and TOWNSEND, JJ., concur.