**MACKENZIE v. PUGH et al.   (No. 1088.)**

(Court of Civil Appeals of Texas. El Paso. April 15, 1920. Rehearing Denied May 13, 1920.)

1. **Mines and minerals ⬤�center⟩57—Escrow agreement covering oil lease construed.**

Where escrow agreement covering oil lease provided, first, that lessee should accept good record title in lessors as shown by abstract, second, that if he had objections to title and pointed them out, and they could not be cured within reasonable time, contract should be at an end, regardless of character of title to be furnished by lessors, whether a limitation or a record title, the life of the agreement depended solely upon one or the other of the two actions to be taken by the lessee.

2. **Reformation of instruments ⬤⟩1—Remedy must accord with agreement of parties and be adapted to facts.**

If reformation of a contract is had, it must flow out of and accord with agreement and obligations of parties, and be adapted to condition of facts to which it is to be applied, being a means of exercising equity powers of court to compel performance of agreement fairly and legally made.

3. **Quieting title ⬤⟩51—Defendant held not entitled to reformation of escrow agreement covering lease, which ended when lessee objected to title.**

Where escrow agreement covering oil lease by its own terms ended when lessee made objections to lessors' title, which could not be cured within reasonable time, lessee is not entitled to opportunity to perform lease on any theory of reformation in fact not granted in suit by lessors to remove cloud from their title by reason of record of the escrow agreement, particularly where other interests have intervened since contract was terminated.

4. **Appeal and error ⬤⟩1062(1)—Error in submission of special issue cured by another special issue.**

In action by lessors to remove cloud from title by reason of lessee's record of escrow agreement covering lease, any error in first issue, submitting character of title agreed to

---

⬤⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

by parties, in that it submitted only as to what plaintiff lessors agreed to -furnish, *held* cured by special issue submitted by plaintiff lessors.

**5. Trial ⬤⟳350(3)—Court required to submit only ultimate issue of fact.**

In action by lessors to remove cloud from title by reason of lessee's record · of escrow agreement covering lease, refusal of special charge requested by defendant lessee whether lessors by reasonable diligence before they signed and delivered could have discovered words "limitation" or "limitation title" were not in agreement *held* proper; court-being required to submit only ultimate issue of facts, which it did.

Appeal from District Court, Erath County; Joe Burkett, Judge.

Suit by D. F. Pugh and others against David Mackenzie and another. From judgment for plaintiffs against him, the named defendant appeals. Affirmed.

Thompson, Barwise, Wharton & Hiner and Miller & Miller, all of Ft. Worth, Geo. W. Dunaway, of Ranger, and D. Hunt, of Eastland, for appellant.

Scott, Brelsford & Smith, Conner & McRae, and Clarence Nugent, all of Eastland, for appellees.

WALTHALL, J. Appellees, D. F. Pugh and wife, G. B. Keahey and wife, Lena Miller and her husband, Sadie Butler and husband, C. Nugent, T. E. C. Stewart, individually and as guardian for Jack, Celia, and Frank Stewart, his minor children, brought this suit against appellant, David Mackenzie, and the First State Bank of Eastland, in trespass to try title, alleging that a certain escrow agreement and lease contract was wrongfully placed of record, and that by reason thereof same casts a cloud upon their title to said land, and they pray that said cloud be removed. The First State Bank was dismissed from the suit. Briefly, and on the issues presented here, appellees alleged ownership and possession in themselves of the land described and all the minerals therein contained under the 10-year statute of limitation; that appellant, Mackenzie, well knew at all times mentioned the nature and extent of their title, and that with such knowledge, on October 10, 1918, contracted with T. E. C. Stewart, for himself and as guardian for the minor children named, and with Mrs. Lena Miller, not joined by her husband, with D. F. Pugh, not joined by his wife, Mattie Pugh, and G. B. Keahey, not joined by his wife, Cleaver Keahey; that Mackenzie would be furnished certain affidavits and assurances that appellees held and owned the land in controversy by adverse possession under the 10-year statute of limitation; that it was agreed and so understood by and between the parties to such agreement that Mackenzie should and did by verbal agreement accept such limitation title, and that he knew none of appellees had a record title to the property; that Mackenzie by the terms of the agreement was to pay appellees the sum of $6,000 as a cash consideration for the execution of such lease on said land, and that said money was to be placed in the First State Bank in escrow pending the securing of an abstract of title to an adjoining tract of land and the affidavits and proofs of title by limitation to the land described; that Mackenzie was to have 15 days only after the delivery to him of the abstract within which time to either accept or reject such title, and said contract to become null and void in the event of his failure or refusal to accept such title; the bank, under such circumstances, would return to appellees their lease and the money to Mackenzie; that such agreement was reduced to writing under the direction of Mackenzie and his attorney, Dunaway; that in the drafting of such oral agreement, by accident, fraud, or mistake, the true terms and conditions of such agreements as were in truth and fact made were not embodied therein, in that the agreement failed to embody the words "limitation title," where the term "merchantable title" was used; it was expressly agreed and understood that the title to be furnished was only a limitation title; that it was thoroughly understood and agreed that appellees would not be required to institute suit to perfect their limitation title, and that through fraud, accident, or mistake, in the preparation of said written agreement, Mackenzie, his attorney, or the stenographer, failed to embody such stipulation; that in pursuance of said contract a mineral lease from appellees to Mackenzie was prepared, by the terms of which the lands here involved were leased for a period of 5 years for the purpose of operating for the production of oil and gas on said land, the terms of which are set forth in said lease, for the cash consideration of $6,000 and other considerations shown in the lease, not necessary to be here stated; that appellees, nor any of them, ever executed, acknowledged, or delivered said escrow agreement, it being alleged that T. E. C. Stewart was not authorized to do so by any order of the probate court to execute the escrow agreement for or on behalf of said minors, and that Lena Miller's husband did not join in the execution of said escrow agreement, it being alleged she was a married woman, and that the property was her separate estate, and it was alleged that Mrs. Cleaver Keahey did not join in the execution of the escrow agreement, nor authorize her husband to do so on her behalf.

It was alleged that within the 15 days allowed by the terms of the escrow agreement proper affidavits of disinterested persons, showing good title in appellees by limitation, were tendered to Mackenzie, and that, after

same had been approved by his counsel, Mackenzie failed and declined to accept said lease, and failed, declined, and refused to pay the said $6,000 as agreed, and continued to fail and refuse to do so until more than 60 days had elapsed after the time in which Mackenzie had to either accept or reject said agreement, and that by reason thereof appellees exercised their option, and declared that said lease contract and agreement were wholly terminated, and of no further force and effect, and that Mackenzie had repudiated the same; that said escrow agreement provided that, if there were any defects in such limitation title that could not be removed within a reasonable time and without litigation, appellees had the right and privilege of revoking same; that Mackenzie caused a copy of said mineral lease to be placed of record, and that same constituted and casts a cloud upon appellees' title; that at the time of the execution of the mineral lease and the escrow agreement Mackenzie represented that he was ready, able, and willing to commence the operations for drilling on said land for oil and gas immediately upon the approval of the limitation title by his attorney, and that appellees relied upon said representations; that said representations were falsely and fraudulently made; that he never, in fact, intended to accept the limitation title, and did not intend ever to drill on said land; that all of the allegations and facts relative to the understanding and agreement between the parties to the escrow agreement that do not appear in such escrow agreement were omitted through fraud, accident, or mistake on the part of Mackenzie, his attorney, or the stenographer, and that by reason thereof said lease and escrow agreement are wholly null and void; that if mistaken in their allegation that the escrow agreement did not contain the full and true agreement and did not reflect the agreement intended to be reduced to writing, then said omission and erroneous terms embodied in the escrow agreement was a mistake of all the parties.

Appellant answered by general demurrer, several special exceptions, general denial, and by special answer alleged, in substance, that as soon as the abstract of title was furnished him by appellees he placed it in the hands of his attorney for examination, and within the time specified in the escrow agreement he and his counsel, in writing, pointed out to appellees, their agents, and the First State Bank the defects in said title as shown by the abstract and the papers furnished therewith, and that appellees did not remove the defects in the title so pointed out, and did not attempt to do so, and instead thereof their agent and attorney, O. Nugent, advised appellant that the contract was at an end, and forbade appellant from going on the land and putting down a well, and that appellees attempted to rescind the lease contract and es-

crow agreement in question, and at the same time leased said land to the Prairie Oil & Gas Company; that a reasonable time within which to remove the objections to the title so pointed out was 90 days, and that said defects could have been removed within said time, and appellees' title rendered good and merchantable, as those terms were used in the escrow agreement; that he represented to appellees, their agents and attorneys, that he was ready, able, and willing to commence the operations for drilling on said land for oil and gas immediately upon the approval of the title by his representation, and that said representations were true and correct, and that he was ready, and at all times able, willling, and anxious, to comply with his part of the lease and the escrow agreement; denied that he so wrote or dictated the escrow agreement as that it did not correctly embody the oral agreement between the parties, and alleged that the escrow agreement correctly stated and embodied the terms of the final agreement between himself and appellees; that appellees failed to furnish a title good by limitation, and failed to attempt to do so, and failed to remedy the defect in said title so pointed out by counsel for appellant, which they were able to do within a reasonable time; that notwithstanding appellees breached the contract, he was anxious to go ahead with the developing of said land for oil and gas, and to that end he agreed with appellees D. F. Pugh and O. Nugent, pending the removal of said objections, that the $6,000 check then deposited in the escrow agreement should be held and not delivered until the defects were removed, and that appellees should indemnify appellant against loss in developing said property by reason of the defects in the title, and as a result of said agreement appellant proceeded diligently with his preparation for developing said land for oil and gas, stating the diligence used; that if the escrow agreement did not correctly represent the oral agreement, and if it could be reformed according to appellees' contentions, still appellant was and is now ready, willing, able, and anxious to go on with said escrow agreement as reformed, and offers, upon appellees' furnishing a good title by limitation, to cause the said $6,000 check to be delivered to them, or to pay $6,000 into the registry of the court, and that he would go on and perform the terms of said contract.

By supplemental petition appellees denied that Pugh and Nugent were in any manner agents of the other appellees, or authorized to bind appellees, or any of them; that land for oil, gas, and minerals sharply fluctuates in value by reason of the production or nonproduction, and that it was necessary to have action at once, and that by reason thereof, and on account of appellant not accepting title to the land when he should have done so, they have leased the property in question to the Prairie Oil & Gas Company, and that

said company at the time of filing this petition had drilled a well on said land, producing approximately 1,000 barrels of oil per day.

By supplemental answer appellant filed special exceptions, general denial, and specially alleged that Pugh and Nugent did act for appellees Pugh and Nugent in the matters mentioned, and that the other appellees permitted Pugh and Nugent to represent them, and confirmed their acts, and are estopped from raising any question that they were not authorized to represent them.

Nugent's interest in the subject-matter of the suit is a royalty interest. Pugh's interest is that of an heir. T. E. C. Stewart's interest is that he married Pugh's sister, who was an heir; she now being dead, Stewart and the minor heirs get their interest through the deceased mother and wife. Mrs. Lena Miller is one of the Stewart children. Mrs. Keahey is a sister of Pugh. The Butlers are connected as heirs.

By a trial amendment it was alleged, in substance, that Vance was employed to correctly reduce the escrow agreement to writing as it was understood and agreed upon; that through inadvertence and mistake Vance failed to embody in the agreement the full and complete understanding, in that the escrow agreement should have embodied that the character of the title intended to be conveyed and the character of title purchased was a limitation title, and the term "merchantable title" used was intended by all parties to mean a limitation title.

The case was submitted to the jury on special issues as follows:

First: "Did plaintiffs agree to furnish defendants an abstract of title showing a 'merchantable' title or a 'limitation' title to said strip of land, which?" The jury answered, Limitation.

Second: "Did plaintiffs furnish defendant with sufficient evidence of limitation title? Answer Yes or No." The jury answered Yes.

Third: "Did defendant accept same in a reasonable time?" The jury answered No.

The jury made no answer to the fourth question.

Fifth: "Could plaintiffs have cured within a reasonable length of time the objections made by defendant to the abstract of title? Answer Yes or No." The jury answered No.

Special question No. 10 (and 10A in substance), by defendant: "Did plaintiff, C. Nugent, know (or could have discovered) at the time the escrow agreement in question was signed that the words 'limitation title' or 'limitation' were not in said escrow agreement? Answer Yes or No." The jury answered Yes.

"Appellees' question No. 1: "Did the parties to said escrow agreement intend to use the words referring to the character of title, with the meaning of a good title by limitation? Answer Yes or No." The jury answered Yes.

There seems to be some confusion as to the numbers by which the questions submitted to the jury are designated, but we have numbered them as in the judgment.

On the verdict returned the court rendered judgment dismissing as to the First State Bank, and in favor of appellees as to Mackenzie.

Appellant, Mackenzie, presents his appeal under 21 assignments of error, and under several assignments are found more than one proposition.

Under the first assignment the question of error, is presented as follows:

"In submitting any issue to the jury because the evidence in this case is insufficient to show that the appellees did not know the omission of the words 'limitation' or 'limitation title' from the escrow agreement, and, this being true, before the appellees are entitled to cancel the said lease in question, it was incumbent upon them to allege and prove that the words 'limitation title' or 'limitation' were left out of the escrow agreement without any fraud or negligence on their part, and the undisputed evidence in this case is that as to those who signed the escrow agreement, and the ones they were authorized to represent, did not read the escrow agreement, and the evidence is undisputed that they were not prevented from reading it, and the evidence as to those who did read it is that they knew the words 'limitation title' or 'limitation,' after the word 'merchantable,' were left out of said agreement, and took no steps to correct it. Therefore, this being true, and the evidence being undisputed that the escrow agreement, according to its written terms, provided for a good merchantable title, and the abstract furnished the appellant by the appellees did not show a good merchantable title, the trial court herein erred in submitting any issue to the jury, because there is insufficient evidence to authorize the case to go to the jury, in that those of the appellees who signed the escrow agreement and those for whom they were acting in signing the escrow agreement failed to prove that the said words, 'limitation' and 'limitation title' were left out without any fault on their part."

[1] We do not concur in the construction placed upon the escrow agreement by appellant. We need state only a portion of the contract here. After the formal part, the names of the parties to the agreement, the fact that appellees lease to appellant the land in controversy for the cash consideration of $6,000, the agreement reads:

"Said first parties are to deposit said lease in the First State Bank of Eastland, Texas, and second party places his check for the said sum of $6,000.00 payable to first party in said bank, said lease and check to be held in escrow by said bank pending examination of title by second party of the leased premises, which shall be done by said second party within fifteen days after the delivery of complete abstract of title certified down to date to him by first party. If said abstract of title disclosed in first parties a good merchantable title to the tract of land described in said lease second party obligated themselves to accept the lease executed and placed in escrow in abovenamed bank, and shall be the duty of said bank to deliver to the second party the lease

above described, and to the first parties the check herein mentioned. If second party or his attorney has objections to said title he shall point the same out in writing and deliver same to first party, his agent or attorney, and first party shall have a reasonable time thereafter within which to cure such objections. In the event said abstract discloses objections to said title that cannot be cured within a reasonable time, then, and in that event, this contract shall become null and void as to both hereto parties and shall be the duty of said bank to return to first parties their lease and to second party his check."

The escrow agreement does not state the character of the title appellees were to furnish. It provides for an abstract of title, and that if the abstract shows a merchantable title in appellees, appellant obligates himself to accept the lease. If appellant has objections to the title he is to point them out in writing and deliver his written objections to appellees. The appellees then have a reasonable time within which to cure the objections so made. If the abstract discloses objections to the title that cannot be cured within a reasonable time, then the contract by its terms is at an end. It will be seen at once that regardless of the character of title to be furnished by appellees, whether a limitation or a record title, the life of the escrow agreement depended solely upon one or the other of two actions to be taken by appellant: First, if the abstract disclosed a good record title in appellees, the title was to be accepted by appellant; second, if the appellant had objections to the title and pointed them out, and the objections could not be cured within a reasonable time, the contract was at an end. The abstract was furnished and was accepted by appellant. He did not accept the title. He chose to make objections to the title. The only question then remaining is presented: Could appellees cure the objections within a reasonable time? That issue was presented to the jury and determined against appellant by its fifth finding, and this finding is not attacked by appellant. The assignment is overruled.

[2, 3] The second, third, fourth, and fifth assignments are submitted under one proposition:

"When a written contract is reformed, thereupon the party against whom reformation is had is entitled in equity to perform the written contract as reformed."

After a careful study of the entire record in the case we have concluded that the proposition under these assignments has no application to the issues presented by the pleadings, facts, or evidence in the case. The suit by appellees was to remove the cloud from their title by reason of the record of the escrow agreement. They did not ask a reformation of the escrow agreement. Appellant's answer upon that feature of it, while expressing a willingness, upon conditions, to then go on with the contract, should it be reformed according to appellees' contentions, did not seek a reformation of the contract. The contract was not reformed. If reformation of a contract is had it must flow out of and accord with the agreement and obligation of the parties, and be adapted to the condition of facts to which it is to be applied, a means of exercising the equity powers of the court, to compel the performance of the agreement fairly and legally entered into. Walden v. Skinner, 101 U. S. 577, 25 L. Ed. 963; Waldron v. Waller, 65 W. Va. 605, 64 S. E. 964, 32 L. R. A. (N. S.) 284.

Courts cannot make contracts for parties. In this case the contract by its own terms came to an end when appellant made objections to appellees' title which could not be cured within a reasonable time. Appellant's answer discloses that other interests have intervened since the contract was terminated. Byrne v. Ft. Smith National Bank, 1 Ind. T. 680, 43 S. W. 957; Story's Equity Jurisprudence, § 154 et seq.

Other objections appear which we need not discuss.

[4] By the sixth and seventh assignments error is claimed to the way in which the first issue is submitted, in that it submits only as to what appellees agreed to furnish, the issue being as to what appellees and appellant agreed to. If the question intended to be submitted had reference to the title to be furnished, it should have embraced both parties. The question submitted has reference only to the abstract of title. If the question was intended to submit for the jury's finding the character of title agreed to by the parties, any error in the first, we think, was cured by special issue No. 1 submitted by appellees and copied above.

[5] By the eighth assignment it is claimed the court was in error in refusing to give the following special charge requested by appellant:

"Could the plaintiffs who signed the escrow agreement in question by reasonable diligence on their part before they signed and delivered the escrow agreement in question have discovered that the words 'limitation' or 'limitation title' were not in the escrow agreement in question?"

In this there was no error. The court was required to submit only the ultimate facts. The view we take of the case, only one really controverted fact, the controlling fact, was material to a decision of the case, and that the court submitted in the fifth issue.

There is no merit in the ninth assignment complaining of the refusal of the court to instruct a verdict for appellant as to any interest Nugent might have in the land under the escrow agreement. Appellant in his objections to the title as shown by the abstract made no exception as to Nugent. Nugent's interest so far as appellant was

concerned depended wholly upon the acceptance of the title of the other appellees, or upon such objections as could be cured within a reasonable time. If the title was not accepted, or the objections to their title could not be cured within a reasonable time, the whole contract was at an end. The same would apply to the tenth, eleventh, twelfth, thirteenth, fourteenth, and fifteenth assignments, as to the interest of the other appellees.

We think it could not be reversible error as to what definition the trial court gave to the two characters of title involved in the controversy, as submitted in the sixteenth, seventeenth, and eighteenth assignments, unless the definition given by the court would probably affect the jury's finding as to whether the objections made by appellant to appellees' title could be cured within a reasonable time. It is not claimed under the assignments that the findings of the jury were probably affected by the definitions complained of. We think none of the jury's findings could be or was probably affected by the definitions of merchantable or limitation title. The objections made by appellant suggested the possibility of suits, and other features, which involved the question of reasonable time within which the objection to the title shown could be cured. We have carefully considered the nineteenth, twentieth, and twenty-first assignments, and believe they present no reversible error.

Finding no reversible error, the case is affirmed.